1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LOUIS PEETS,                              No.  2:18-CV-2469-KJM-DMC-P

12                    Plaintiff,

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   SCOTT KERNAN, et al.,

15                    Defendants.

16

17             Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the Court is Defendants' motion to dismiss, ECF No. 32.

19

20                        **I. PLAINTIFF'S ALLEGATIONS**

21             This action proceeds on Plaintiff's second amended complaint against the

22   following 14 defendants:  (1) Scott Kernan, the Secretary of the California Department of

23   Corrections and Rehabilitation (CDCR); (2) Kathleen Allison, the Director of CDCR's Adult

24   Institutions; (3) Robert W. Fox, the Warden of the California Medical Facility (CMF); (4)

25   Richard Townsend, Correctional Officer at CMF; (5) David Maldonado, Community Resources

26   Manager at CMF; (6) Thomas Huntley, Custody Captain at CMF; (7) James Appleberry, Custody

27   Captain at CMF; (8) Christopher Tileston, Associate Warden and Chief Disciplinary Officer at

28   CMF; (9) Daniel Cueva, Chief Deputy Warden at CMF; (10) J. Dominguez, Appeals Examiner at

                                              1

CDCR headquarters; (11) M. Voong, Chief of Inmate Appeals at CDCR headquarters; (12) David

Haley, Correctional Counselor II at CMF; (13) Maylene Boucher, Unit IV Captain at CMF; and

(14) Pal Shleffar, Head Rabbi at CDCR headquarters.  See ECF No. 12, pgs. 1-4.  Plaintiff

specifically alleges that Defendants Kernan, Allison, and Fox are sued in their individual and

official capacities.  See id. at 3.  Plaintiff states that the remaining defendants are sued in their

individual capacities.  See id. at 4.

Plaintiff alleges the following five claims:

Claim I – First Amendment Right to Free Speech – Retaliation

Plaintiff claims Defendant Townsend violated his First Amendment right to free

speech by repeatedly punishing Plaintiff, a practicing Jew, for observing the Sabbath as retaliation

for criticizing the library work schedule to the warden.  See id. at 5-15.

Though Claim I – and indeed all of Plaintiff's claims – centers around alleged

conduct by Defendant Townsend, in Claim I Plaintiff alleges various supervisory defendants are

also liable.[1]  According to Plaintiff, Defendant Fox is liable because he was empowered to stop

the misconduct but did not.  See id. at 7.  Plaintiff states: "Defendant Fox is thus supervisory

liable. . . ."  Id. at 5.  Plaintiff states Defendant Shleffar, the CDCR's "head rabbi," was aware of

the problem and failed to bring it to the attention of the CDCR's Statewide Religious Review

Committee (SRRC).  See id. at 7.  Plaintiff alleges Defendant Cueva, a deputy warden, is liable

for failure to properly train and supervise Defendant Townsend.  See id. at 9.  Plaintiff states that

Defendant Maldonado, the "contact person" for the "Religious Review Committee (RRC)," is

liable for failing to correct the situation.  Id.  According to Plaintiff, Defendant Huntley, a custody

captain, is liable for failure to train and supervise.  See id. at 10.  Plaintiff also states Defendant

Huntley is liable for failing to intercede.  See id.  Plaintiff contends Defendants Boucher and

Haley, as members of the "UCC" which removed Plaintiff from his job as a library clerk, are

liable.  See id. at 13.  Plaintiff claims that Defendant Kernan, the Director of the CDCR, and

Defendant Allison, the CDCR's Director of Adult Institutions, are liable for failing to safeguard

---

[1]     In each of his other claims, Plaintiff incorporates by reference the paragraphs
outlining the allegations of Claim I.

1   Plaintiff's constitutional rights.  See id. at 13-14.

2          Finally, Plaintiff alleges in Claim I that various defendants are liable for conduct

3   relating to a rules violation report.  Plaintiff states that Defendant Appelberry, as the disciplinary

4   hearing officer, was required to uphold Plaintiff's constitutional rights and that he failed to do so

5   by finding him guilty of a rules violation.  See id. at 12.  Plaintiff asserts that Defendant Tileston,

6   CMF's Chief Disciplinary Officer, had authority to reverse Defendant Appleberry's decision but

7   failed to do so, in violation of due process.  See id.  Defendants Dominguez and Voong are

8   alleged to be liable as the Appeals Examiner and Chief of Inmate Appeals, respectively.  See id.

9   at 12-13.

10              Claim II – First Amendment Right to Free Exercise of Religion

11          Plaintiff claims Defendant Townsend violated his First Amendment right to free

12   exercise of religion by ordering him to work on Saturdays, the Jewish Sabbath, after a year and a

13   half of accommodating his observance of the Sabbath. See id. at 16.  Plaintiff adds: "[T]he acts

14   and omissions of the other named defendants render[] them supervisory liable before and/or after

15   the fact."  Id.

16                        Claim III – RLUIPA

17          Plaintiff claims the actions of Defendant Townsend violated the Religious Land

18   Use and Institutionalized Persons Act (RLUIPA) by imposing "substantial burdens" on Plaintiff's

19   religious exercise without a compelling governmental interest. See id. at 17.  As with Claim II,

20   Plaintiff adds: "[T]he acts and omissions of the other named defendants render[] them supervisory

21   liable before and/or after the fact."  Id.

22          Claim IV – Equal Protection Clause of the Fourteenth Amendment

23          Plaintiff claims that Defendant Townsend violated his Fourteenth Amendment

24   right to equal protection because CMF allows Catholic and Muslim inmates, but not Jewish

25   inmates, to observe their Sabbaths without punishment.  See id. at 18.  Again, Plaintiff alleges

26   that the "other named defendants" are "supervisory liable."  Id.

27   / / /

28   / / /

3

1    <u>Claim V – Due Process Clause of the Fourteenth Amendment</u>

2          Plaintiff claims Defendant Appleberry violated his Fourteenth Amendment right to

3    due process because he denied Plaintiff's appeal of the rules violation report even though the

4    charges against him were supported by no evidence.  <u>See id.</u> at 19.  Specifically, Plaintiff claims:

5    "Defendant Appleberry acknowledged that Plaintiff's Saturday work absences were for 'religious

6    reasons,' but he nonetheless found Plaintiff guilty as charged, thereby supporting that conclusion

7    with no evidence and therefore violated Plaintiff's due process rights. . . ."  <u>Id.</u>  Plaintiff adds:

8    "Reviewers/defendants Tileston, Fox, Cueva, Dominguez, and Voong all upheld the guilty 115

9    finding, even though it was supported by no evidence. . . ."  <u>Id.</u>

10

11                        **II. STANDARDS FOR MOTION TO DISMISS**

12          In considering a motion to dismiss, the court must accept all allegations of material

13   fact in the complaint as true.  <u>See Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007).  The court must

14   also construe the alleged facts in the light most favorable to the plaintiff.  <u>See Scheuer v. Rhodes</u>,

15   416 U.S. 232, 236 (1974); <u>see also Hosp. Bldg. Co. v. Rex Hosp. Trustees</u>, 425 U.S. 738, 740

16   (1976); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or

17   doubts must also be resolved in the plaintiff's favor.  <u>See Jenkins v. McKeithen</u>, 395 U.S. 411,

18   421 (1969).  However, legally conclusory statements, not supported by actual factual allegations,

19   need not be accepted.  <u>See Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se

20   pleadings are held to a less stringent standard than those drafted by lawyers.  <u>See Haines v.</u>

21   <u>Kerner</u>, 404 U.S. 519, 520 (1972).

22          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

23   of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

24   notice of what the . . . claim is and the grounds upon which it rests."  <u>Bell Atl. Corp v. Twombly</u>,

25   550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  However, in order

26   to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

27   more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

28   allegations sufficient "to raise a right to relief above the speculative level."  <u>Id.</u> at 555-56.  The

                                          4

complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

Defendants argue in general that Plaintiff has failed to plead sufficient facts to state claims against any of them. ECF No. 32-1, pgs. 1-2. Specifically, Defendants raise the following five arguments:

> 1.   Plaintiff fails to state a cognizable retaliation claim because the actions taken against him were in response to his failure to perform his job and they advanced a legitimate correctional interest in reducing workloads and wait times. Id. at 7-8.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.       Plaintiff fails to state a cognizable free exercise claim[2] because he was offered another job where he would not be required to work on Saturdays and there were no "easy alternatives" to resolve the issues caused by Plaintiff's refusal to work his assigned shifts.  Id. at 6-7.

3.       Plaintiff fails to state a cognizable equal protection claim because he has not pled any facts indicating an intent or purpose to discriminate against Jewish inmates.  Id. at 8-10

4.       Plaintiff fails to state a cognizable due process claim because he does not have a protected liberty interest in the grievance process at CMF.  Id. at 10-11.

5.       All claims for damages against defendants who are sued in their official capacities are barred by the Eleventh Amendment.  Id. at 11.

Defendants do not address Plaintiff's RLUIPA claim.

A.       **Retaliation**

In Claim I, Plaintiff alleges that Defendant Townsend retaliated against Plaintiff for criticizing the library work schedule to the warden. See ECF No. 12, pgs. 5-15.  Defendants argue that Plaintiff has failed to plead two necessary elements of his retaliation claim: (1) that Plaintiff's protected conduct was the cause of the adverse action; and (2) that the adverse action did not serve a legitimate penological purpose.  ECF No. 32-1, pg. 7.

For the reasons discussed below, the Court does not agree and finds that Plaintiff has sufficiently pleaded all four elements of a retaliation claim against Defendant Townsend. Plaintiff's retaliation allegations against the other defendants named in Claim I, however, are insufficient to establish their liability for their roles as supervisory personnel or member of committees or departments tasked with reviewing rules violations, appeals, and/or grievances.

1.       Defendant Townsend

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting

---

[2]       In this section of Defendants' brief, Defendants cite Plaintiff's allegations in Claim I, which is a First Amendment retaliation claim.  See ECF No. 32-1, pgs. 6-7.  The section does not, however, discuss the law relating to retaliation in the context of these allegations.  Instead, Defendants discuss the factors relevant to a violation of the Free Exercise Clause of the Fourteenth Amendment, which is alleged in Claim II.

6

this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

    a.  Whether Defendant Townsend Took Adverse Action Against Plaintiff

   Throughout Claim I, Plaintiff alleges a litany of adverse actions taken against him by Defendant Townsend.  According to Plaintiff, on August 23, 2016, Defendant Townsend issued Plaintiff his first rule violation report (a "115").  ECF No. 12, pg. 7.  On September 1, 2016, Defendant Townsend refused to open the library door, preventing Plaintiff from beginning his work. Id. at 8.  Plaintiff further contends that, on September 10, 2016, Defendant Townsend issued Plaintiff his second write-up, a "Counseling Only Rules Violation Report."  Id. at 9.  On October 11, 2016, Plaintiff worked an extra day for an inmate worker who could not work that day and Defendant Townsend refused to pay Plaintiff for the hours he worked.  Id.  On September 17, 2016, Defendant Townsend allegedly issued Plaintiff his third write-up, an administrative 115.  See id.  On December 3, 2016, Defendant Townsend allegedly issued Plaintiff his fourth write-up, a serious 115.  See id. at 10.  These write-ups led to Plaintiff receiving a disciplinary hearing and removal from his position in the library.  See id. at 12.

/ / /

/ / /

/ / /

/ / /

1

           b.       <u>Whether the Adverse Action was Taken Because the Inmate</u>
                         <u>Engaged in Protected Conduct</u>

2

3        The crux of Plaintiff's first claim is that he experienced retaliatory conduct

4 because he requested a religious accommodation.  To state a retaliation claim, Plaintiff must

5 allege that the retaliatory conduct outlined above occurred because Plaintiff requested an

6 accommodation.

7        According to Plaintiff, he began working as a clerk in the library on January 10,

8 2015. <u>See</u> <u>id.</u> at 6.  Plaintiff was assigned Fridays and Saturdays as Regular Days Off (RDO) to

9 accommodate his religious observance of the Jewish Sabbath. <u>See</u> <u>id.</u>  Plaintiff alleges that

10 Defendant Townsend was assigned as the library supervisor on May 11, 2016.  <u>See</u> <u>id.</u>  In June

11 2016, the prison warden, decided to cut clerk positions from the library to make more efficient

12 use of resources.  <u>See</u> <u>id.</u> at 15.  On July 9, 2016, Plaintiff received his new work schedule,

13 indicating he would not have Saturdays off.  <u>Id.</u> at 6.

14        On July 10, 2016, Plaintiff told Defendant Townsend that he would not be able to

15 work on Saturdays because of a religious conflict.  <u>See</u> <u>id.</u>  Defendant Townsend allegedly told

16 Plaintiff that "that the Sabbath issue would not be a problem, as he would simply issue Plaintiff

17 ETO [Excused Time Off] for his mandated Saturday absences." <u>Id.</u>  Nonetheless, on August 19,

18 2016, Plaintiff complained to Defendant Townsend's supervisor about the new schedule that

19 Defendant Townsend created.  <u>Id.</u>  According to Plaintiff, the very next day Defendant Townsend

20 threatened Plaintiff with "progressive discipline" if he did not report to work on Saturdays. <u>Id.</u>

21        The Court finds that Plaintiff has alleged that he engaged in protected conduct,

22 specifically voicing his concerns about his work schedule and religious needs.  It is also clear

23 Plaintiff has alleged, as outlined above, numerous instances of adverse action taken against him.

24 These adverse actions allegedly occurred between August 23, 2016, and December 16, 2016 –

25 <u>after</u> Plaintiff complained on August 19, 2016, about the work schedule imposed by Defendant

26 Townsend.  Plaintiff also alleges that, after complaining about the work schedule, Defendant

27 Townsend threatened "progressive discipline" if Plaintiff did not report to work on Saturdays as

28 scheduled (and apparently despite Defendant Townsend's alleged promise of ETO).  Finally, the

8

second amended complaint alleges that, following this threat, Defendant Townsend issued

Plaintiff a string of disciplinary write-ups ultimately concluding in Plaintiff's removal from his

position as a library clerk.

The Court concludes that Plaintiff's allegations are sufficient to show, if true, that

Defendant Townsend carried through with this threat and took adverse action against Plaintiff

because Plaintiff engaged in protected conduct.

        c.     <u>Whether the Adverse Action Chilled Plaintiff's First Amendment Rights</u>

At paragraphs 88 and 89 of the second amended complaint, Plaintiff alleges:

88.     **The Chilling Effect:** Defendant Townsend's actions chilled Plaintiff's exercise of his First Amendment rights in that Plaintiff was thereafter apprehensive about complaining against staff. . . .

89.     Plaintiff also became fearful that his cell would be ransacked and/or that he would be transferred to another prison and/or that he would be otherwise harassed. . . .

ECF No. 12, pg. 8 (bold in original).

These allegations satisfy the chilling element

        d.     <u>Whether the Adverse Action Served a Legitimate Penological Purpose</u>

According to Defendants:

As addressed above, the institution took action because of a legitimate correctional interest, maintaining an accessible law-library. Plaintiff's continued absence from his law-library assignment only prejudiced the institution and other inmates. Thus, the more plausible conclusion from the pleadings is that the institution acted responsibly to ensure an accessible law library at CMF.

ECF No. 32-1, pg. 8.

This argument is unpersuasive.  In particular, Plaintiff seems to anticipate

Defendants' argument and alleges that "[t]here would exist valid, rational connections between

them [reducing workloads and wait times] and the write-ups, but only if defendant Townsend was

being truthful about his motives for the write-ups in the first place; and [u]pon information and

belief, defendant Townsend was less than truthful about said motives." ECF No. 12, pg. 14.

1   According to Plaintiff, though Defendant Townsend cited increased workload and inmate wait

2   times as the negative consequences of Plaintiff's absence from work in all four write-ups he

3   issued to Plaintiff, Defendant Townsend failed to fill the vacant Saturday work slot.  Id. at 8.  It is

4   reasonable to infer from these allegations that, had Defendant Townsend been sincere in his

5   desire to ensure each inmate who used the library was helped in a reasonable time and the library

6   inmates helping them were not overworked, he would have filled the Saturday slot Plaintiff would

7   not work.  Based on Plaintiff's allegation that he did not, it is also reasonable to infer that

8   Defendant Townsend was motivated by something other than his stated legitimate penological

9   interests, specifically a desire to impose "progressive discipline" in retaliation for Plaintiff's

10   complaints about the work schedule.

11          The Court finds that Plaintiff has sufficiently pleaded facts to show that Defendant

12   Townsend's alleged conduct did not serve legitimate penological interests.

13                      2.      Other Defendants

14          In Claim I, Plaintiff alleges the remaining 13 defendants are also liable for

15   retaliation.  Specifically, he contends Defendants Fox, Shleffar, Cueva, Maldonado, Huntley,

16   Boucher, Haley, Kernan, and Allison are responsible as supervisory personnel and Defendants

17   Appleberry, Tileston, Dominguez, and Voong are responsible insofar as they are supervisory

18   personnel, found Plaintiff guilty on a rules violation report, or processed related appeals and

19   grievances.[3]  Plaintiff's allegations against each are summarized as follows:

20          Fox              Warden of CMF – According to Plaintiff, Defendant Fox is

21                           liable because he was empowered to stop the misconduct but
                             did not.  See ECF No. 12, pg. 7. Plaintiff states: "Defendant Fox

22                           is thus supervisory liable. . . ." Id. at 5.

           Schleffar        Head CDCR Rabbi -- Plaintiff states Defendant Shleffar, was

23                           aware of the problem and failed to bring it to the attention of the
                             CDCR's Statewide Religious Review Committee (SRRC).

24                           See id. at 7.

25          Cueva            Deputy Warden of CMF – Plaintiff alleges Defendant Cueva is

26                           liable for failure to properly train and supervise Defendant
                             Townsend.  See id. at 9.

27   _____

28          [3]      In Claim V, Plaintiff also raises a due process claim against Defendants
     Appleberry, Tileston, Fox, Cueva, Dominguez, and Voong related to a rules violation.

| | | |
|---|---|---|
| 1 | <u>Moldonado</u> | "Contact Person" for the Religious Review Committee (RRC) – Plaintiff states that Defendant Maldonado is liable for failing |
| 2 | | to correct the situation.  See <u>id.</u> |
| 3 | <u>Huntley</u> | Custody Captain at CMF – According to Plaintiff, Defendant Huntley is liable for failure to train and supervise.  See <u>id.</u> at 10. |
| 4 | | Plaintiff also states Defendant Huntley is liable for failing to intercede.  See <u>id.</u> |
| 5 | | |
| 6 | <u>Haley</u> | Member of the UCC at CMF – Plaintiff contends Defendant Haley, as a member of the "UCC" which removed Plaintiff from his job as a library clerk, is liable.  See <u>id.</u> at 13. |
| 7 | | |
| 8 | <u>Boucher</u> | Member of the UCC at CMF – Plaintiff contends Defendants Boucher, as a member of the "UCC" which removed Plaintiff from his job as a library clerk, is liable.  See <u>id.</u> |
| 9 | | |
| 10 | <u>Kernan</u> | Director of the CDCR – Plaintiff claims that Defendants Kernan is liable for failing to safeguard Plaintiff's constitutional rights.  See <u>id.</u> at 13-14. |
| 11 | | |
| 12 | <u>Allison</u> | CDCR's Director of Adult Institution – Plaintiff claims that Defendants Allison is liable for failing to safeguard Plaintiff's constitutional rights. See <u>id.</u> |
| 13 | | |
| 14 | <u>Appleberry</u> | Hearing Officer at CMF – Plaintiff alleges that Defendant Appleberry was required to uphold Plaintiff's constitutional rights and that he failed to do so by finding him guilty of a rules |
| 15 | | violation.  See <u>id.</u> at 12. |
| 16 | <u>Tileston</u> | Chief Disciplinary Officer at CMF – Plaintiff asserts that Defendant Tileston had authority to reverse Defendant |
| 17 | | Appleberry's decision but failed to do so.  See <u>id.</u> |
| 18 | <u>Dominguez</u> | Appeals Examiner – Plaintiff claims Defendant Dominguez is liable as a result of denying Plaintiff's appeal.  See <u>id.</u> at 12-13. |
| 19 | | |
| 20 | <u>Voong</u> | Chief of Inmate Appeals – Plaintiff claims Defendant Voong is liable as a result of denying Plaintiff's appeal.  See <u>id.</u> |

The Court finds Plaintiff's retaliation claim against these defendants fails for several reasons.  Specifically, Plaintiff has not adequately pleaded the liability of defendants who are alleged to hold supervisory roles.  Further, as to those defendants who are alleged to have been involved in determination of a rules violation report issued to Plaintiff by Defendant Townsend, Plaintiff has not alleged a link between protected conduct and adverse action.  Finally, Plaintiff does not state a claim against those defendants who are only alleged to have reviewed Plaintiff's grievances/appeals.

/ / /

11

1
    a.    Supervisory Defendants

2        Plaintiff's allegations against Defendants Fox, Shleffar, Cueva, Huntley,

3    Mondonado, Kernan, and Allison are based on the theory that they failed to properly supervise

4    Defendant Townsend.  Supervisory personnel are generally not liable under § 1983 for the actions

5    of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is

6    no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

7    violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

8    Supreme Court has rejected the notion that a supervisory defendant can be liable based on

9    knowledge and acquiescence in a subordinate's unconstitutional conduct because government

10   officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

11   and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory

12   personnel who implement a policy so deficient that the policy itself is a repudiation of

13   constitutional rights and the moving force behind a constitutional violation may, however, be

14   liable even where such personnel do not overtly participate in the offensive act.  See Redman v.

15   Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

16       When a defendant holds a supervisory position, the causal link between such

17   defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

18   Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

19   1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

20   civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

21   Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

22   official's own individual actions, has violated the constitution."  Iqbal, 662 U.S. at 676.

23       Here, Plaintiff has not alleged implementation of any policy which resulted in

24   retaliation.  Nor has Plaintiff alleged any personal conduct on the part of Defendants Fox,

25   Shleffar, Cueva, Huntley, Mondonado, Kernan, or Allison.  Plaintiff should, however, be

26   provided an opportunity to amend to the extent he can do either.

27   / / /

28   / / /

1      b.  Defendants Who Ruled on the Rules Violation Report

2      Plaintiff alleges in Claim I that Defendant Appelberry, as the disciplinary hearing

3 officer, was required to uphold Plaintiff's constitutional rights and that he failed to do so by

4 finding him guilty of a rules violation.  See ECF No. 12, pg. 12.  Plaintiff also asserts that

5 Defendant Tileston, CMF's Chef Disciplinary Officer, had authority to reverse Defendant

6 Appleberry's decision but failed to do so.  See id.

7      As discussed above, Plaintiff alleges Defendant Townsend lied in his various

8 reports concerning Plaintiff's refusal to attend work duty on Saturdays, including the rules

9 violation report at issue which resulted in Plaintiff's removal from his job in the library.

10 According to Defendants Appleberry and Tileston, Plaintiff improperly refused to attend his work

11 assignment.  Moreover, the adverse finding on the rules violation report indicates Defendants

12 Appleberry and Tileston concluded that Plaintiff had, in fact, refused a lawful Saturday work

13 assignment.  It is thus unclear whether the alleged adverse action – the guilty finding on the rules

14 violation report – was based on protected conduct or unprotected conduct.  It is similarly unclear

15 that the adverse finding did not serve a legitimate penological interest.  The Court finds that,

16 while Plaintiff's allegations are unclear, he should be provided an opportunity to amend to allege

17 facts meeting each of the four elements of retaliation as against Defendants Appleberry and

18 Tileston.

19      c.  Defendants Who Reviewed Grievances/Appeals

20      Defendants Dominguez and Voong are alleged to be liable as the Appeals

21 Examiner and Chief of Inmate Appeals, respectively.  See id. at 12-13.  At the outset, the Court

22 observes that prisoners have no stand-alone due process rights related to the administrative

23 grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

24 Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

25 inmates to a specific grievance process).  Because there is no right to any particular grievance

26 process, it is impossible for due process to have been violated by ignoring or failing to properly

27 process grievances.   Numerous district courts in this circuit have reached the same conclusion.

28 See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

1   process grievances did not violate any constitutional right); <u>Cage v. Cambra</u>, 1996 WL 506863

2   (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

3   grievances does not support constitutional claim); <u>James v. U.S. Marshal's Service</u>, 1995 WL

4   29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process

5   a grievance did not implicate a protected liberty interest); <u>Murray v. Marshall</u>, 1994 WL 245967

6   (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function

7   properly failed to state a claim under § 1983).

8          Prisoners do, however, retain a First Amendment right to petition the government

9   through the prison grievance process.  See <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995).

10   Therefore, interference with the grievance process may, in certain circumstances, implicate the

11   First Amendment.  Here, Plaintiff has not alleged that either Defendant Dominguez or Defendant

12   Voong interfered with the grievance process.  In the context of Plaintiff's retaliation claim in

13   which Defendants Dominguez and Voong are named, Plaintiff has not alleged that these

14   defendants reached an adverse decision because Plaintiff requested religious accommodation and

15   in the absence of a legitimate penological interest.  Plaintiff should also be provided an

16   opportunity to amend as to Defendants Dominguez and Voong.

17          **B.**     **<u>Free Exercise and RLUIPA</u>**

18          In Claim II and Claim III, Plaintiff alleges Defendant Townsend violated his

19   religious exercise rights under both the First Amendment (Claim II) and RLUIPA (Claim III) by

20   requiring him to work on Saturdays.[4]

21          The United States Supreme Court has held that prisoners retain their First

22   Amendment rights, including the right to free exercise of religion.  See <u>O'Lone v. Estate of</u>

23   <u>Shabazz</u>, 482 U.S. 342, 348 (1987); <u>see also</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  Thus,

24   for example, prisoners have a right to be provided with food sufficient to sustain them in good

25   health and which satisfies the dietary laws of their religion.  See <u>McElyea v. Babbit</u>, 833 F.2d

26   196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities

27   ───────────────
           [4]      In both claims, Plaintiff incorporates his allegations against the other defendants in
28   Claim I by reference.  Plaintiff does not add any allegations specific to the other defendants in the
     context of Plaintiff's religious exercise claims.

                                                    14

1   where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428

2   F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.

3   See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to

4   that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto,

5   405 U.S. 319, 322 (1972).

6           However, the court has also recognized that limitations on a prisoner's free

7   exercise rights arise from both the fact of incarceration and valid penological objectives.  See

8   McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a

9   simplified food service has been held sufficient to allow a prison to provide orthodox Jewish

10  inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873,

11  877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting

12  inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930,

13  38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

14          While free exercise of religion claims originally arose under the First Amendment,

15  Congress has enacted various statutes in an effort to provide prisoners with heightened religious

16  protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these

17  congressional efforts, prison free exercise claims were analyzed under the "reasonableness test"

18  set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The

19  first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA)

20  of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."

21  See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d

22  732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of

23  Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free

24  exercise challenges brought by prison inmates).

25          Congress then enacted the Religious Land Use and Institutionalized Persons Act

26  (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of

27  Boerne."  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir.

28  2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on

15

1    religious exercise unless there exists a compelling governmental interest and the burden is the

2    least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the

3    Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible

4    with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates

5    exceptional government-created burdens on private religious exercise.'"  Warsoldier, 418 F.3d at

6    994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by

7    replacing the "reasonableness test" articulated in Turner with the "compelling government

8    interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

9              Under both the First Amendment and RLUIPA, the prisoner bears the initial

10   burden of establishing that the defendants substantially burdened the practice of his religion by

11   preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio,125 F.3d

12   732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d

13   at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a

14   "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining

15   "substantial burden" in the First Amendment context).  To show a substantial burden on the

16   practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the

17   adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by

18   the religion or by preventing him or her from engaging in conduct or having a religious

19   experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir.

20   1987).  The burden must be more than a mere inconvenience.  See id. at 851.  In the context of

21   claims based on religious diets, a plaintiff must prove that prison officials refused to provide a

22   diet which satisfies his religious dietary laws or that the available prison menu prevented him

23   from adhering to the religious dietary laws mandated by his faith.  See Bryant v. Gomez, 46 F.3d

24   948, 949 (9th Cir. 1995).

25             Defendants argue that even if the regulation issue in this case does create a

26   substantial burden on Plaintiff's ability to practice his religion, Plaintiff's free exercise claim still

27   fails because the regulation is reasonable under the four-factor Turner test. ECF No. 32-1, pg. 6.

28   The Court, accepting all allegations in the second amended complaint as true and construing all

                                                      16

1    alleged facts in the light most favorable to Plaintiff, disagrees and finds the second amended

2    complaint states a religious exercise claim under the First Amendment and RLUIPA as against

3    Defendant Townsend.[5]

4                    1.        First Amendment Analysis

5                    Under the First Amendment "reasonableness test," where the inmate shows a

6    substantial burden the prison regulation or restriction at issue is nonetheless valid if it is

7    reasonably related to a legitimate penological interest.  See Shakur v. Schriro, 514 F.3d 878, 884

8    (9th Cir. 2008) (citing Turner, 482 U.S. at 89).  In applying this test, the Court must weight four

9    factors:  (1) whether there is a rational connection between the regulation or restriction and the

10   government interest put forward to justify it; (2) whether there are available alternative means of

11   exercising the right; (3) whether accommodation of the asserted religious right will have a

12   detrimental impact on prison guards, other inmates, or the allocation of limited prison resources;

13   and (4) whether there exist ready alternatives to the regulation or restriction.  See id.; see also

14   Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

15                   For the reasons discussed below, the Court finds that, on balance, the Turner

16   factors indicate that Plaintiff's second amended complaint states a claim under the First

17   Amendment based on an unreasonable restriction related to work as a library clerk on the Jewish

18   Sabbath.

19                         a.        Whether There is a Rational Connection Between the Regulation
                                     and the Government Interest Justifying It
20

21                   Defendants argue the first factor – whether there is a rational connection between

22   the restriction and the government interest – weighs in their favor.  The Court does not agree.

23   Defendants frame the restriction as a "determin[ation] that there were too may clerks" and the

24   governmental interest as "more efficient use of the prison's resources." ECF No. 32-1, pg. 6.

25   Defendants are correct that if there were too many clerks, firing some would be an efficient use of

26   prison resources.  However, Plaintiff does not allege that the firing of clerks is the regulation

_____

27        [5]        To the extent Plaintiff alleges liability in Claim II and Claim III against the other
     defendants, the Court has recommended Plaintiff be provided an opportunity to amend as
28   discussed further above in the context Plaintiff's retaliation claim.

1    substantially burdening the practice of his religion.  Plaintiff contends that the restriction

2    imposing a substantial burden is the requirement that "all library employees must work on

3    Saturdays" even though Saturday is the Jewish Sabbath.  ECF No. 12, pg. 6.  Defendants have not

4    shown a rational connection between mandatory Saturday work schedules and more efficient use

5    of prison resources.  This factor weights in favor of Plaintiff.

6            b.      Whether There are Available Alternative Means of Exercising the
                     Right
7

8            Defendants argue the second factor – whether there are available alternative means

9    of exercising the right – also weighs in their favor.  Defendants posit that Plaintiff could continue

10   to observe the Sabbath by changing work positions to a porter, which does not require work to be

11   done on Saturday.  See ECF No. 32-1, pg. 6.  Plaintiff claims that Defendants did not provide

12   Plaintiff with an alternative means to exercising his right while working at his current job.  ECF

13   No. 12, pg. 10.  Plaintiff further claims he was told that if he did not want to work on the Sabbath

14   he would have to quit his current job, which is not an appropriate accommodation.  Id.

15           The Court agrees with Defendants as to this factor.  While Plaintiff focuses on his

16   desire to remain a clerk in the library, Defendants are correct that Plaintiff has no interest in any

17   particular job.  See Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004).  The right at issue is

18   Plaintiff's religious right relating to the Sabbath.  As to exercising this right, Plaintiff admits in

19   the second amended complaint that he was offered an alternative job that did not require him to

20   work on Saturdays.  See ECF No. 12, pg. 10.

21           c.      Whether Accommodation Will Have a Detrimental Impact on
                     Prison Guards, Other Inmates, or the Allocation of Limited Prison
22                   Resources

23           Defendants argue the third factor – the impact of an accommodation of the

24   asserted constitutional right – weighs in their favor.  Defendants posit that "Plaintiff's failure to

25   report for work on Saturdays created a ripple effect in the law library, prejudicing not only

26   Plaintiff's fellow clerks, but the other inmates who utilized the library on Saturdays."  ECF No.

27   32-1, pg. 7.  This argument is based on pure speculation and not supported by any allegations in

28   the second amended complaint or citation to authority.  Furthermore, as alleged in the second

                                              18

amended complaint, after Plaintiff was fired from his law library position, the post was not filled for more than a year, even though there were many qualified candidates at the time and despite Defendants' assertion that the work-shortage caused by Plaintiff's actions "prejudiced" the institution.  See ECF No. 12, pg. 16.  Construing all alleged facts in the light most favorable to Plaintiff and drawing all reasonable inferences, the Court finds that the third Turner factor weights in Plaintiff's favor.

d.      Whether There Exist Ready Alternatives to the Regulation

Defendants claim the final factor – whether there exist obvious alternatives that indicate an exaggerate response to prison concerns – weighs in their favor.  Defendants contend that, "given the decisions made by defendant Fox (to fire four inmate workers from the library as to improve efficient use of prison resources), there was no obvious alternative given Plaintiff's Sabbath absence." ECF No. 32-1, pg. 7.  In other words, Defendants assert that the only way to run the library at optimal efficiency was to fire all inmate workers who could not work on Saturdays.  This argument is not plausible.

More plausible is Plaintiff's contention that hiring another library worker is the most obvious alternative.  Plaintiff claims this would ensure prisoner accommodations would not leave the remaining staff overworked or library patrons with long wait times. See ECF No. 12, pg. 15.  Plaintiff also alleges a second alternative: simply change Plaintiff's RDO, allowing him to observe the Sabbath and productively work another day of the week. See Id.  These are ready alternatives pleaded in the second amended complaint.  This final Turner factor also favors Plaintiff.

2.      RLUIPA Analysis

While the Court finds that Plaintiff's religious exercise claim may proceed under the First Amendment, and while Defendants do not address Plaintiff's separate RLUIPA claim, the Court nonetheless does so here and finds that Plaintiff's RLUIPA claim is also sufficient to proceed.

/ / /

/ / /

19

Under RLUIPA, the government is held to a much stricter standard than under the First Amendment alone and must show that the substantial burden placed on religious exercise is "in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest."  Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008).  The government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'"  Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95.  Prison security is an example of a compelling governmental interest.  See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13).  In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice.  See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987).  Here, Plaintiff alleges he is Jewish and is prohibited by his faith from working on Saturdays Judaism prohibits working on the Sabbath.  He also alleges that Defendant Townsend imposed a work schedule requiring him to work on the Sabbath.  The Court finds Plaintiff has sufficient states a substantial burden on the exercise of his religion.

For the reasons discussed above in the context of Claim II under the First Amendment, the Court finds that Plaintiff's allegations are sufficient to establish, if true, that Defendants' stated reasons for implementing the new work schedule were not rationally related to the government interest stated to justify it.  Thus, the regulation at issue would also fail the stricter "compelling interest" test under RLUIPA.

1          In establishing that the regulation or restriction is the least restrictive means to

2   achieve a compelling governmental interest, prison officials must show that they actually

3   considered and rejected the efficacy of less restrictive means before adopting the challenged

4   practice.  See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).  As also discussed

5   above in the context of Plaintiff's First Amendment free exercise claim, the Court finds Plaintiff's

6   allegations are sufficient to establish that Defendants did not consider less restrictive alternatives

7   (i.e., alternatives which would have allowed Plaintiff to work in the library on days other than

8   Saturdays).

9          **C.      Equal Protection**

10          In Claim IV, Plaintiff alleges Defendant Townsend violated his equal protection

11   rights by treating him differently than other inmates based on religion.[6]  Equal protection claims

12   arise when a charge is made that similarly situated individuals are treated differently without a

13   rational relationship to a legitimate state purpose.  See San Antonio School District v. Rodriguez,

14   411 U.S. 1 (1972).  Prisoners are protected from intentional discrimination on the basis of their

15   religion.  See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997).  In order to state a § 1983

16   claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a

17   plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or

18   against a class of inmates which included plaintiff, and that such conduct did not relate to a

19   legitimate penological purpose.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

20          Defendants posit that Plaintiff fails to plead any facts demonstrating that

21   Defendants intentionally discriminated against him or any other Jewish person in the library.  See

22   ECF No. 32-1, pg. 9.  Plaintiff alleges "discrimination is the only plausible reason for

23   CMF's/CDCR's treatment of Plaintiff – and Jewish inmates, generally – and for CMF's/CDCR's

24   retention of the noted policy."  ECF No. 12, pg. 18.  However, Plaintiff admits that he had not

25   experienced any negative treatment from any of the defendants until after he criticized the new

26   work schedule.  See id. at 6.  Plaintiff pleads no facts suggesting the change in schedule was

27   _____

28          [6]       As with Claim II and Claim III, Plaintiff's Claim IV incorporates by reference his
general allegations against the other defendants from Claim I.

1    intended to discriminate against him because he is Jewish.[7]

2           **D.     <u>Due Process</u>**

3           In Claim V, Plaintiff alleges that Defendant Appleberry, Tileston, Fox, Cueva,

4    Dominguez, and Voong are liable for violation of Plaintiff's due process rights for finding hm

5    guilty of a false rules violation report.

6           The Due Process Clause protects prisoners from being deprived of life, liberty, or

7    property without due process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  With

8    respect to prison disciplinary proceedings, due process requires prison officials to provide the

9    inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes

10   the charges, a description of the evidence against the inmate, and an explanation for the

11   disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses,

12   unless calling witnesses would interfere with institutional security; and (3) legal assistance where

13   the charges are complex or the inmate is illiterate.  <u>See Wolff</u>, 418 U.S. at 563-70.  Due process is

14   satisfied where these minimum requirements have been met, <u>see Walker v. Sumner</u>, 14 F.3d

15   1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which

16   supports the decision of the hearing officer, <u>see Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985).

17   The "some evidence" standard is not particularly stringent and is satisfied where "there is any

18   evidence in the record that could support the conclusion reached."  <u>Id.</u> at 455-56.

19          Defendants argue Plaintiff's due process claim is not cognizable.  <u>See</u> ECF No. 32-

20   1, pg. 10.  The Court agrees.  <u>See Patkins v. Ferguson</u>, No. 19-CV-05139-EMC, 2018 WL

21   6671513 at *2 (N.D. Cal. 2018); <u>see also Smith v. Mensinger</u>, 293 F.3d 641, 653-54 (3rd Cir.

22   2002) (concluding that prisoner failed to state due process claim based on false charges because

23   the punishment imposed was not an atypical hardship under <u>Sandin v. Conner</u>, 515 U.S. 472, 484

24   (1995)); <u>see also Freeman v. Rideout</u>, 808 F.2d 949, 951-52 (2nd Cir. 1986) (concluding

25   allegations that false evidence was planted by a prison guard do not state a due process claim

26   where procedural due process protections are provided).

27   _____

28          [7]     To the point, Plaintiff alleges in Claim I that Defendant Townsend's conduct was
     motivated by an intent to retaliate, not discriminate.

                                        22

Here, Plaintiff contends he suffered removal from his library clerk job and loss of good-conduct points as a result of the guilty finding.  See ECF No. 12, pg. 5.  These are the typical kinds of hardships inmates face.  Because Plaintiff was not assessed an atypical hardship as a result of the guilty finding, Plaintiff cannot state a due process claim based on the alleged falsity of the report.  Further, Plaintiff has not alleged that he was denied any of the required procedural protections in the context of the disciplinary proceedings.

### E.  Official Capacity

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states.  See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  The Eleventh Amendment also bars actions seeking damages from state officials acting in their official capacities.  See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam).  The Eleventh Amendment does not, however, bar suits against state officials acting in their personal capacities.  See id.  Under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities.  See Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997).

Defendants argue Plaintiff's claims are barred to the extent they are raised against any defendant in their official capacities.  ECF No. 32-1, pg. 11.  To the extent Plaintiff does not sue the defendants in their individual capacities or seek prospective injunctive relief – both of which Plaintiff does in the second amended complaint – the Court agrees.  Here, Plaintiff alleges Defendants Kernan, Allison, and Fox are sued in their individual, as well as official, capacities.  See ECF No 12, pg. 3.  All other defendants are sued in their individual capacities only.  See id. at 4.  Furthermore, Plaintiff seeks a permanent injunction directing defendants Kernan, Allison, and Fox to provide various forms of prospective relief.  See id. at 21.

/ / /

/ / /

/ / /

23

# IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion to dismiss, ECF No. 32, be granted in part and denied in part;

2.      Defendants' motion be granted as to Plaintiff's equal protection claim (Claim IV) and Plaintiff's due process claim (Claim V);

3.      Defendants' motion be denied as to Plaintiff's retaliation claim (Claim I) and religious exercise claims (Claim II and Claim III) against Defendant Townsend;

4.      Defendants' motion be granted as to Plaintiff's claims against the remaining 13 defendants; and

5.      Plaintiff be provided the opportunity to either:

(a)      Elect to proceed on the second amended complaint as against Defendant Townsend only on Plaintiff's retaliation and religious exercise claims (Claim I, Claim II, and Claim III); or

(b)      File a third amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  March 24, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

24